Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/30/2018 09:11 AM CDT

IN RE INTEREST OF J'ENDLESSLY F. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
V. JULIA M., APPELLANT.

___ N.W.2d ___

Filed October 30, 2018.    No. A-17-1156.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.
2. **Constitutional Law: Due Process.** The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.
3. **Appeal and Error.** On a question of law, an appellate court reaches a conclusion independently of the court below.
4. **Parental Rights: Proof.** Under Neb. Rev. Stat. § 43-292 (Reissue 2016), in order to terminate parental rights, the State must prove, by clear and convincing evidence, that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests.
5. **Constitutional Law: Parental Rights.** The proper starting point for legal analysis when the State involves itself in family relations is always the fundamental constitutional rights of a parent.
6. **Parental Rights: Proof.** Before the State attempts to force a breakup of a natural family, over the objections of the parents and their children, the State must prove parental unfitness.
7. ____: ____. A court may not properly deprive a parent of the custody of his or her minor child unless the State affirmatively establishes that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right.
8. ____: ____. It is always the State's burden to prove by clear and convincing evidence that the parent is unfit and that the child's best interests are served by his or her continued removal from parental custody.

- 498 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

9. **Parental Rights: Statutes: Words and Phrases.** The term "unfitness" is not expressly used in Neb. Rev. Stat. § 43-292 (Reissue 2016), but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests.

10. **Parental Rights: Evidence: Proof.** Generally, when termination of parental rights is sought, the evidence adduced to prove the statutory grounds for termination will also be highly relevant to the best interests of the juvenile, as it would show abandonment, neglect, unfitness, or abuse.

11. **Parental Rights: Parent and Child.** In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child.

12. **Parental Rights.** Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered.

13. ____. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity.

14. **Constitutional Law: Due Process.** Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.

Appeal from the Separate Juvenile Court of Douglas County: Douglas F. Johnson, Judge. Affirmed.

Judith A. Wells, of Law Office of Judith A. Wells, for appellant.

Donald W. Kleine, Douglas County Attorney, Jennifer C. Clark, Natalie J. Killion, and Joseph Fabian, Senior Certified Law Student, for appellee.

Pirtle, Riedmann, and Welch, Judges.

Riedmann, Judge.

### INTRODUCTION

Julia M. appeals the order of the separate juvenile court of Douglas County which terminated her parental rights to

- 499 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

her minor children. Upon our de novo review of the record, we affirm.

## BACKGROUND

Julia is the mother of four children: J'Loyal P., born in September 2008; J'Ahnesti M., born in August 2009; J'Endlessly F., born in November 2014; and J'Legacy S., born in November 2016. Some of the children's fathers were made part of the case before the juvenile court, but because none of them have appealed their respective outcomes, we do not address them further.

The family came to the attention of the Nebraska Department of Health and Human Services on January 11, 2016, when police were dispatched to a hospital to investigate potential child abuse. The responding officers learned that Julia had asked her sister, Jamie M., to pick up J'Endlessly from the child's paternal grandmother, and Jamie later observed an injury to the child's groin area that resembled a burn and took her to the hospital. The officers discovered that Julia had given temporary custody of J'Endlessly to her other sister, Virginia M., at some point in 2015, but became upset with Virginia, picked up J'Endlessly in September, and did not contact anyone until asking Jamie to pick up the child the previous day. The officers also learned that Julia left J'Loyal and J'Ahnesti in Jamie's custody in September 2015. Jamie and Virginia informed the officers that Julia was addicted to methamphetamine, and they were concerned for the children's safety if they were returned to Julia's care.

The officers observed the injury to J'Endlessly's groin that appeared to be a burn and also observed bruising to her lower back area and the back of both of her shoulders. Doctors at the hospital also discovered that she had a healed fracture to her "left pinky finger." All three children were removed from Julia at that time and placed in foster care with Virginia.

The following day, the State filed a petition alleging that J'Loyal, J'Ahnesti, and J'Endlessly were children within the

- 500 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015) due to the faults or habits of Julia. Specifically, the petition alleged that J'Endlessly had been observed with an unaccounted for injury; Julia used "drugs, alcohol, and/or controlled substances"; Julia failed to provide proper care, support, and supervision for the children; Julia failed to provide safe, stable, and appropriate housing for the children; and due to the foregoing allegations, the children were at risk of harm.

Counsel was appointed for Julia on January 15, 2016, but counsel moved to withdraw in March due to a conflict of interest. The juvenile court permitted her to withdraw and appointed substitute counsel for Julia. The State was unable to locate Julia to personally serve her with the petition and notice of hearing, so she was ultimately served by publication in March.

On April 20, 2016, the juvenile court held a "first appearance, protective custody, adjudication, and disposition hearing" as to Julia. Julia did not attend. At the outset of the hearing, Julia's substitute counsel indicated to the court that neither she nor the original counsel appointed to represent Julia had ever spoken with Julia, and Julia had never appeared in court. Thus, based on the lack of communication with Julia, the court discharged counsel and excused her from the hearing.

In support of the adjudication petition, the State offered into evidence proof of service by publication and the affidavit for removal of the children from January 11, 2016. The caseworker also explained that she had not spoken with Julia in approximately 2 months, and Julia had had only one visit with the children. Based on a preponderance of the evidence presented by the State, the court adjudicated the children under § 43-247(3)(a). At that time, the juvenile court also ordered that Julia refrain from alcohol and controlled substances; undergo random drug testing; participate in Alcoholics Anonymous and/or Narcotics Anonymous, provide proof of attendance, and obtain a sponsor; undergo an initial diagnostic interview and chemical dependency evaluation;

- 501 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

obtain and maintain a legal source of income and safe, stable, and appropriate housing; and participate in visitation with the children.

Although not transcribed and included in the record before us, a hearing was held on May 17, 2016, at which Julia did not appear. The evidence established that there had been no contact with Julia and that she had not visited the children or participated in services; thus, the caseworker recommended that no further reasonable efforts be required to work toward reunifying the children with Julia. In a written order, the juvenile court ordered that no further reasonable effort services were required with respect to Julia.

A review hearing was held on July 25, 2016, and Julia, who was incarcerated at the time, personally appeared. The juvenile court adopted a concurrent permanency objective of adoption at that time and reappointed counsel for Julia. Julia was represented by counsel throughout the remainder of the case.

After J'Legacy was born, the State filed a second amended third supplemental petition alleging that she was a child within the meaning of § 43-247(3)(a) (Reissue 2016) as to Julia due to the ongoing case with the older children and Julia's lack of participation in services designed to rehabilitate her. Julia was served with the petition by publication in March 2017. An adjudication hearing with respect to J'Legacy was held on April 21; Julia did not appear. In its order, the juvenile court found that Julia's whereabouts were unknown and the caseworker had been unable to contact her and that Julia had offered no support for J'Legacy and had not seen her since December 2016. The court therefore found the allegations in the second amended third supplemental petition to be true and adjudicated J'Legacy under § 43-247(3)(a).

On May 15, 2017, the State filed a motion to terminate Julia's parental rights to J'Loyal, J'Ahnesti, and J'Endlessly under Neb. Rev. Stat. § 43-292(1), (2), (6), (7), and (9) (Reissue 2016). The State additionally moved to terminate

- 502 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

Julia's parental rights to J'Legacy pursuant to § 43-292(2) and (6). The motion also alleged that terminating Julia's parental rights was in the children's best interests. Julia was served with the motion by publication in July 2017.

A hearing on the termination motion was held on September 29, 2017. As of that time, the three older children had been in foster care since January 2016, and J'Legacy had been in foster care since December 2016. The caseworker was assigned to the case when it began in January 2016 but was unable to make contact with Julia until April. At that time, Julia agreed to participate in visitation, but throughout the entirety of the case, she attended only three visits with the three older children and five visits with J'Legacy, all of which occurred in December 2016. She was offered three visits in January 2017 but canceled all of them. As of September 2017, she had not seen any of the children since the prior December.

At the time of the termination hearing, J'Loyal was in third grade. He was continuing to struggle with some "behavioral concerns" and had been "caught stealing fireworks over the [F]ourth of July, attempting to feed the foster parent's dog chocolate stating that he wanted to kill the puppy, and [throwing] sand in another peer's face during a baseball game." He was diagnosed with "Other Specified Disruptive Impulse Control and Conduct Disorder" and was continuing to participate in therapy. Despite all of this, he gets along well with his sisters and was doing well in school with no concerns about his grades.

J'Ahnesti was in second grade, and there were no concerns about her grades or ability to do her schoolwork. Her negative behaviors had recently decreased, and she had been observed walking away from her brother when he began to act out and helping her foster mother with laundry and cooking, and her overall listening had improved. She has a good bond with her siblings. She has been diagnosed with "Adjustment Disorder with Mixed Disturbance of Emotions and Conduct" and was

- 503 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

continuing to participate in therapy to work on her anger out-
bursts and coping skills.

J'Endlessly was almost 3 years old and had no behavioral or
developmental concerns. She was walking, running, climbing,
and holding conversations, and she was fully toilet trained. She
has a bond with her foster mother and siblings.

J'Legacy was 9 months old and placed in a separate foster
home. Other than having a milk protein intolerance, she was
healthy and developmentally on track.

Throughout the duration of the case, the Department of
Health and Human Services had difficulty setting up any
of the court-ordered services for Julia because it never had
valid contact information for her and was never able to regu-
larly communicate with her. She never completed any of
the required services and made no progress during the case.
Between January and September 2017, the caseworker had
contact with Julia on just one occasion. In addition, Julia was
incarcerated several times throughout the pendency of the
case. Although the dates of Julia's incarcerations are somewhat
unclear from the record, we understand that she was incarcer-
ated from June through December 2016 and was reincarcerated
in July 2017 and remained so at the time of the termination
hearing in September.

Julia testified in her own behalf at the hearing and admitted
that she had previously served an 8- to 12-year prison term.
Despite this, she asserted that she had attempted to rehabilitate
herself by completing multiple parenting classes and other
courses, as well as "complet[ing her] GED." The caseworker,
however, opined that terminating Julia's parental rights was in
the best interests of the children because of the history of the
case, the lack of the children's relationship with Julia, and their
need for permanency, which did not appear to be an option
with Julia.

In a subsequent written order, the juvenile court found all
of the allegations of the termination motion were true by clear
and convincing evidence and that it was in the best interests

- 504 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

of the children to terminate Julia's parental rights. It therefore terminated Julia's parental rights to all four children. Julia appeals.

## ASSIGNMENTS OF ERROR

Julia assigns, restated, that the juvenile court erred in terminating her parental rights because the State failed to adduce clear and convincing evidence that termination was in the children's best interests and that her right to due process was violated when she was denied her right to counsel.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Carmelo G.*, 296 Neb. 805, 896 N.W.2d 902 (2017).

[2,3] The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *Id*. On a question of law, an appellate court reaches a conclusion independently of the court below. *Id*.

## ANALYSIS

*Termination of Parental Rights.*

[4-6] Julia argues that the juvenile court erred in finding that terminating her parental rights was in the children's best interests. Under § 43-292, in order to terminate parental rights, the State must prove, by clear and convincing evidence, that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests. *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009). The proper starting point for legal analysis when the State involves itself in family relations is always the fundamental constitutional rights of a parent. *Id*. The interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests

- 505 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

recognized by the U.S. Supreme Court. *Id*. Accordingly, before the State attempts to force a breakup of a natural family, over the objections of the parents and their children, the State must prove parental unfitness. *Id*.

[7-9] A court may not properly deprive a parent of the custody of his or her minor child unless the State affirmatively establishes that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right. *Id*. It is always the State's burden to prove by clear and convincing evidence that the parent is unfit and that the child's best interests are served by his or her continued removal from parental custody. *Id*. The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests. *In re Interest of Hope L. et al., supra*.

In the present case, the juvenile court found sufficient evidence to support terminating Julia's parental rights under § 43-292(1), (2), (6), (7), and (9). In relevant part, § 43-292 provides:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> (1) The parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition;
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247,

- 506 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination;

(7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months;

. . . .

(9) The parent of the juvenile has subjected the juvenile or another minor child to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse.

Subsections (1) through (6) of § 43-292 have been referred to as the fault and neglect subsections. See *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). Julia does not challenge the juvenile court's findings with respect to statutory grounds to support termination. Upon our de novo review of the record, we conclude that the State established by clear and convincing evidence the statutory grounds for termination along with Julia's unfitness. We therefore turn to Julia's argument that the evidence was insufficient to prove that terminating her parental rights was in the best interests of the children.

[10,11] Generally, when termination of parental rights is sought, the evidence adduced to prove the statutory grounds for termination will also be highly relevant to the best interests of the juvenile, as it would show abandonment, neglect, unfitness, or abuse. See *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id*.

During the present case, Julia showed no improvement, and it was difficult to see a beneficial relationship between her and the children when she attended so few visits with them.

- 507 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

Throughout the entirety of the case, Julia never maintained consistent contact with anyone or participated in any services. There were concerns that she was using methamphetamine, but those concerns could never be addressed because she never completed a chemical dependency evaluation or any random drug testing, nor did she communicate with the caseworker such that any services could even begin. She participated in very few visits, and as of the termination hearing, she had not seen any of the children in 9 months.

[12] In addition, Julia's repeated incarcerations also hindered her ability to make any progress in order to achieve reunification. Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). Because Julia was incarcerated off and on since the case began in January 2016, she has not been able to provide the children with consistent necessary parental care and protection. As a result, she simply has been unable to provide the children with such basic necessities as housing and food. She has additionally been unable to tend to the children's daily needs or to provide them with any emotional support because she never consistently attended visitation with the children or was unable to attend due to incarceration. And during the 7-month period in which she was not incarcerated, she made no effort at all to work toward reunification with the children.

[13] In the approximately 21 months between the time the children were removed from Julia's care until the termination hearing, Julia was never able to overcome her personal deficiencies in order to place herself in the position to independently parent her children. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Jahon S., supra*. The caseworker assigned to the case opined that terminating Julia's parental rights was in the children's best interests in order to allow the children the permanency they need. We

- 508 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

therefore conclude that based on the record before us, the State established by clear and convincing evidence that it was in the best interests of the children that Julia's parental rights be terminated.

*Procedural Due Process.*

Julia also argues that her procedural due process rights were violated when the juvenile court discharged her counsel and she was unrepresented "during the entirety of these proceedings." Brief for appellant at 10. We disagree with Julia's characterization of the facts. She was without counsel only from April 20 until July 25, 2016. We recognize that during that timeframe, the older three children were adjudicated, and the court ordered that no further reasonable efforts were required to work toward reunifying the children with Julia. Nevertheless, Julia does not specifically allege how she was prejudiced by the procedures followed in this case, nor does she direct our attention to any applicable case law to support her argument.

[14] State intervention to terminate the parent-child relationship must be accomplished by procedures meeting the requisites of the Due Process Clause. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker. *In re Interest of Ty M. & Devon M., supra*.

Julia was appointed counsel at the outset of the case. She was served with the petition by publication after the State was unable to locate her for personal service, and she had the opportunity to attend the adjudication hearing or, at a

- 509 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

minimum, make contact with either attorney that had been appointed for her during the 3-month period between the filing of the petition and the adjudication hearing. She elected not to communicate with counsel or attend the hearing. Thus, the juvenile court subsequently discharged her counsel pursuant to its authority set forth in Neb. Rev. Stat. § 43-279.01(2) (Reissue 2016). Despite this, Julia continued to be personally notified of all hearings scheduled thereafter, affording her the opportunity to be heard, but she elected not to participate in the matter. Accordingly, the court had the discretion to discharge court-appointed counsel based on Julia's failure to maintain communication, counsel was reappointed once Julia appeared in court, and Julia was afforded notice and the opportunity to be heard. We therefore find that the procedure followed in this case comports with due process.

We also observe that the State sought termination of Julia's parental rights to the children under several subsections of § 43-292, including § 43-292(2). No prior adjudication is required to terminate a parent's rights under this subsection. See *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999). Upon our de novo review of the record, we find that the evidence was sufficient to support termination pursuant to this subsection. Specifically, the evidence presented at the termination hearing established that Julia had substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection. Therefore, even if there had been a defect at the adjudication phase, the juvenile court was not precluded from considering the termination of Julia's parental rights under § 43-292(2). See *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

Counsel was reappointed for Julia more than a year prior to the termination hearing. The record reflects that she was advised of her rights under § 43-279.01(1) at more than one hearing, and she personally appeared and was represented by counsel at the termination hearing. As a result, we conclude

- 510 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF J'ENDLESSLY F. ET AL.
Cite as 26 Neb. App. 497

that the procedures followed in the present case did not violate Julia's right to due process.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the separate juvenile court terminating Julia's parental rights to J'Loyal, J'Ahnesti, J'Endlessly, and J'Legacy.

AFFIRMED.