IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF KING R. & SAGE M.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF KING R. & SAGE M., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

FLORENCIO R., APPELLANT.


Filed April 1, 2025.    Nos. A-24-572, A-24-573.


Appeals from the County Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Affirmed.

Allison M. Witcofski, of Douglas, Kelly, Ostdiek, Snyder, Ossian and Vogl, P.C., for appellant.

No appearance by appellee.


MOORE, PIRTLE, and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

Florencio R. appeals from the orders of the county court for Scotts Bluff County, sitting as a juvenile court, which terminated his parental rights to his children, King R. and Sage M. Upon our de novo review of the record, we affirm the juvenile court's orders.

## STATEMENT OF FACTS

Florencio and Kym M. are the parents of King R., born in September 2021, and Sage M., born in September 2022. Florencio has resided in Colorado throughout this case. Florencio has two additional minor children with another mother, both of which are involved in the juvenile court system in Colorado.

- 1 -

Prior to Sage's birth, Kym also lived in Colorado. She came to Nebraska with King to visit a friend and gave birth to Sage at the friend's residence in September 2022. The children were removed from Kym's care due to concerns about her drug use and homelessness. The children were placed in the custody of the Nebraska Department of Health and Human Services (the Department) and have been in out-of-home placement in Nebraska since September 12, 2022. Kym has not participated in services provided by the Department, including contact with the children, since February 2023. Both Florencio's and Kym's parental rights were terminated in the juvenile court's July 2024 termination order. Kym did not appear for the termination hearing (her attorney was present). She has not appealed, and we only discuss her as necessary to provide context for Florencio's appeal.

On September 12, 2022, the State filed petitions in the juvenile court alleging that the children were within the meaning of Neb. Rev. State. § 43-247(3)(a) (Reissue 2016) because Kym's use of controlled substances placed them at risk of harm and/or deprived them of necessary parental care; Kym was homeless; the children lacked safe and stable housing; and Florencio failed to protect the children. The State also filed motions for temporary custody with the Department, which the court granted based on Kym's drug use and inability to provide for the children's basic needs.

Although Florencio had not been served, he voluntarily appeared in person for the first appearance hearing on September 21, 2022. He waived reading of the petitions and entered denials to the allegations. The juvenile court ordered genetic testing and stated that Florencio was allowed to appear by Webex for future hearings. Florencio's paternity of the children was established in March 2023.

At a hearing on November 8, 2022, Kym admitted the allegations of the initial petition, and the juvenile court entered an order adjudicating the children as juveniles within the meaning of § 43-247(3)(a). At a subsequent hearing on April 19, 2023, Florencio appeared and entered admissions to the allegations of an "amended petition" that does not appear in our record. The court again adjudicated the children under § 43-247(3)(a), and it ordered the Department to prepare a case plan and court report. The court also changed the permanency goal in the case from reunification to adoption with a concurrent goal of reunification.

The first case plan for Florencio in the record is for the period from April 19 to September 30, 2023. A safety goal in the plan stated that Florencio would utilize his support network, to demonstrate that he has safe housing and can meet the children's basic needs, before reunification could be achieved. The goal under the "Priority Need" section of the plan specified that Florencio would provide safe and appropriate parenting by ensuring the children were healthy and safe as evidenced by addressing and maintaining sobriety, engaging in a healthy parenting relationship, developing and utilizing a support network, and ensuring that resources and basic needs were met. The plan set out the strategies for Florencio to meet that goal, including participating in and completing parenting classes, demonstrating skills learned during visits with the children, establishing a positive and healthy parental relationship, learning and using coping skills to deal with stress, and establishing a support network. Following a June 7, 2023, dispositional hearing, the juvenile court directed Florencio to comply with the terms of the case plan. The only other case plan in the record concerning Florencio was a plan for the period from January 17 to July 1, 2024, which specified similar goals and strategies.

Following a November 20, 2023, review hearing, the juvenile court found that Florencio was making "[l]ess than acceptable progress."

On February 7, 2024, the State filed motions to terminate Florencio's parental rights to the children. The State alleged grounds for termination under Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Reissue 2016) and that termination of Florencio's parental rights was in the children's best interests.

A termination hearing was held before the juvenile court on April 4, 2024. Florencio appeared in person with his attorney. The court heard testimony from several Department case workers and family support workers, the foster mother, a Colorado case worker, a family and child advocate at the housing facility in Colorado where Florencio resided at the time of trial, and Florencio. The court received exhibits, including a copy of the most recent case plan for Florencio and the genetic testing results establishing his paternity.

Kassandra Perez was the Department case worker who performed the initial assessments in this case. Perez investigated the abuse and neglect report received by the Department after Sage tested positive for THC and amphetamines at birth. Sage was born prematurely "over the toilet at [Kym's] friend's house." Perez noted that Kym had just recently come to Nebraska, was homeless, and had had no prenatal care. Kym admitted to Perez that she had used marijuana throughout her pregnancy. Perez also visited King, who was then 11 months old, at the house of Kym's friend. Perez' concerns for the children at the time of her investigation included Kym's use of substances around the children, Kym's homelessness, and her lack of supplies for Sage. Based on her conversation with Kym in the hospital, Perez also had concerns about Kym's mental health.

Emma Timm has been the ongoing Department case worker since December 2023. Timm testified about the services offered by the Department to Florencio and his progress on the goals of his case plan. Timm had made referrals for two separate parenting classes for Florencio that could be attended virtually. Timm was unaware of whether Florencio had participated in the classes; she had not received any certificates or notices of participation from the service providers. The Department offered fully supervised visits to Florencio, beginning in June 2023. The visitation schedule was initially 4-hour visits, every other week; the schedule was reduced to one visit per month beginning in February 2024, due to Florencio's inconsistent attendance. To help with travel from Colorado, the Department provided Florencio with food vouchers, gas vouchers for a gas station in Scottsbluff, and some hotel/motel stays. The Department has also offered monthly team meetings for Florencio in this case since his paternity was established; he only attended the January 2024 meeting. During her time on the case, Timm has sent Florencio a text the morning of each meeting, called him just prior to the start time, and also sent him a Zoom link in advance of the meeting. Timm received notification that Florencio accepted the Zoom link for one meeting other than the one he attended in person. Timm was not aware of the Department offering any services to Florencio regarding sobriety. Timm has had regular contact with Florencio during her time on the case via text message and phone calls, as well as in-person contact.

Based on her review of the visitation notes, Timm testified to both positive and negative aspects of Florencio's visitation with the children. At the beginning of visits, Florencio picks up food and gas vouchers from the Department office, uses the vouchers to get food for the children, and returns to the visitation center. Timm noted that Florencio helps bring the children inside once they arrive for the visit. During visits, he interacts with the children by playing with the toys that

are in the visitation room, speaks with the children, and "does his best." Florencio utilizes diapers that have been sent with the children for the visit. With respect to concerns, Timm noted that Sage "has a very hard time," often "screaming almost the entire visit." Florencio has difficulty soothing and calming Sage. Timm sometimes steps in to help, and she testified that on those occasions, she has been able to calm Sage by interacting with him, distracting him with toys, and giving him "a familiar face." Florencio's visitation has never moved beyond fully supervised.

Timm's concerns for Florencio at the time of trial included his extensive history with Child Protective Services in both Nebraska and Colorado, having a total of four children all under the age of three "involved in the system." She also noted the information she had received from Colorado about Florencio's substance use, his lack of progress in his juvenile cases in both states, his inability to calm Sage during visits and interact with King, and Florencio's inability to provide for the children's basic needs. Florencio had shared certain information with Timm about his efforts in Colorado. He told Timm that he was seeing a therapist, as well as a psychologist, and was attending a parenting class in Colorado. Timm had not received any documentation to confirm his reports.

Two employees of Snowy Peak, the service provider for supervision of Florencio's visits, testified. Brittania Shifflett supervised visits between Florencio and the children from about June 2023 through the end of the year. During Shifflet's time on the case, there were always two staff workers present for visits because there were "times when [Florencio] would become very upset and yell." Sometimes the support workers had to "have the caseworker come downstairs to sit because [Florencio] was getting very upset." Shifflett observed that Florencio did not have "a lot of interaction" with the children, seemed unknowledgeable about caring for the children and had to be prompted with respect to many tasks. Shifflett saw "[v]ery little" improvement in this aspect of Florencio's visits. Shifflett testified that "most of the time," Florencio "struggled" with things like playtime and trying to get Sage to take a nap, although there were times when "the interaction was decent" and he would play with toy cars and trucks with King. She also noted that Florencio had to be redirected due to "a lot of inappropriate talk" with respect to certain terminology he used in addressing King. Throughout her time on the case, Shifflett had concerns about substance use; she testified that Florencio would come into visits smelling like marijuana.

Valerie Cox has supervised Florencio's visits with the children since December 2023. Cox confirmed that Florencio helps her get the children out of her vehicle and into the visitation center. She noted that Sage does not appear to like going into the building where visits occur and will sometimes cry, although he had not cried as much "lately." When Sage cries, Florencio walks around with him; checks if Sage is hungry, tired, or needs his diaper changed; and tries to "soothe him as much as possible." Cox reported that Florencio is successful in soothing Sage "at least half of the time." Cox noted that King is "very patient" and sits quietly and plays while Florencio is tending to Sage. Sometimes someone "from CASA" is there, and that individual will read to King or play with him while Florencio is interacting with Sage. Once Sage is asleep for a nap, Florencio uses that time to play with King. In general, during visits, Florencio plays with both children, checks their diapers regularly and changes them if needed, and prepares their food for lunch or snacks. According to Cox, Florencio "stays engaged with them almost the entire visit." She only noted one occasion, near the beginning of her time on the case, when she had to redirect Florencio to check Sage's diaper when he "was just really crying." She indicated that he responded to her

redirection appropriately. Cox had never noticed Florencio using any "inappropriate language or names" during visits. Cox testified that at first, "[Florencio] was kind of a little bit apprehensive" during visits, but that over the course of her time on the case, "he became more relaxed." She had never noticed Florencio smelling of marijuana. Cox had no concerns about the children's safety during their visits with Florencio.

Kylie Wilcox, the Colorado case worker for ongoing cases (opened in September 2023 and March 2024) involving Florencio's other children, testified about those cases. Florencio's children in Colorado (approximately 6 months and 1½ years old at the time of the termination hearing in this case) were in the custody of the Colorado Department of Human Services and placed in foster care. Florencio has a "treatment plan" in the Colorado cases, consisting of substance testing, mental health evaluation and treatment, protective parenting capacity, making sure he is a safe parent, stable housing and stable employment, and caseworker contact.

Florencio had missed more than half of his random drug tests over the entire span of testing, although he had been testing more regularly. Florencio had positive tests for marijuana and cocaine (hair follicle test) within the previous 4 months. Wilcox testified that the test results have been addressed with Florencio, and he admitted that he was "working to regain his sobriety" after having been "sober" for about 6 months. According to Wilcox, Florencio's reported "drug[s] of choice" are cocaine and marijuana. Wilcox expressed that her primary concern in the Colorado cases was Florencio's sobriety. She noted that there were concerns with Florencio tampering with substance testing, which concerns existed in a previously closed case. Florencio also has a mental health evaluation and treatment plan in Colorado. A referral was made for mental health services in December 2023. Florencio had engaged in mental health services in a prior case, but he had not done so since the most recent referral.

Wilcox indicated that Florencio currently had a stable housing environment. She did not observe any safety hazards during a walk-through of Florencio's apartment. Florencio was not working, but he did do "volunteer hours" through his housing program and other organizations. Wilcox indicated that Florencio was "present" and "very engaging" with the children in the Colorado cases during visits, that he attended his scheduled family time, and that she looked forward to continuing to work with him.

Monica Olvera, a family and child advocate with Providence at the Heights (Providence) in Aurora, Colorado, where Florencio lived at the time of trial, testified about her work with Florencio. According to Olvera, Providence provides permanent, supportive housing for people who were previously incarcerated, are homeless, or both. Olvera works with families living at Providence "to help with whatever basic needs they have." Florencio has lived at the Providence apartment complex since March 2023. Olvera has been to Florencio's apartment and testified that she had no safety concerns with it. The apartment has a washer and dryer in the unit, two bedrooms, a bathroom, a kitchen, and a "standard-size living room." Olvera testified that as long as residents follow the apartment complex rules, they can stay "as long as they need to be [there]." Olvera stated that having "any drugs in the building," not following "the visitor policy," and "acting inappropriately on the property," would be considered violations of the rules. If residents break any of the rules, they can be evicted.

Olvera meets with Florencio regularly, makes referrals for various meetings he attends at Providence, and ensures his basic needs are being met, including needs that one of his children in

the Colorado juvenile court system might have. Olvera attended some of Florencio's supervised visits with this child "[t]o advocate for Florencio," and she reported that Florencio was always appropriately prepared for these visits, which occurred at his apartment, and that the visits went "really well." Florencio attended Circle of Parents, a weekly parenting class at Providence that provides parenting skills and support. Olvera noted that the program includes parenting skills on topics like patience, understanding children's "temper tantrums," and toilet training. Florencio also meets with coaches from Sober Is, a sobriety support group. According to Olvera, "[T]hey are recovery team peer coaches," who conduct a support group for those who want to attend. The program allows attendees to work with a sobriety coach and gives them a chance to talk with coaches and their peers about triggers, success stories, and any other sobriety concerns. Providence has a therapist onsite; Olvera was aware that Florencio had been seeing the therapist and making it to his weekly appointments. With respect to Florencio's ability to support himself, Olvera testified Florencio does not work, but that he is "connected with a lot of different agencies that can help him with support."

Florencio confirmed that he has been living in the Providence apartment complex since March 2023. He described the layout of his apartment, noted that he had a bunk bed in the larger bedroom for the children, and that he had toys and other items available for them. Florencio also noted that there was a daycare across the street from his apartment and a park and a school about two blocks away.

Florencio testified about services he was participating in in Colorado. Florencio confirmed his participation in Circle of Parents and Sober Is and that he had both a therapist and a psychologist. Florencio was not involved in "any kind of medication management" but he does "use medical marijuana," which he noted was legal in Colorado. Florencio also confirmed that he was not employed and testified that he is "more than likely going to be retiring" due to "some medical issues." He did not specify the nature of his medical issues. Florencio has volunteered at Struggle of Love Foundation since 2019, which he described as "a community service place" that provides "mental health, food banks[, and] anything community based."

Florencio also testified about his visitation with the children in Nebraska, including his difficulties in traveling from Colorado to Nebraska. Florencio initially had reliable transportation for visits. He noted that he missed some visits, however, because he did not have money for gas. According to Florencio, when he asked the ongoing case worker prior to Timm for assistance, he was told that the Department could only help him with travel expenses to return to Colorado from his visits in Nebraska. Florencio noted that at some point, the windows in his vehicle "got busted out" and he could not drive it in that condition. He also indicated that he had difficulty driving the vehicle in winter because it is "a lower vehicle." According to Florencio he was "open" and "communicative" with the Department about missing visits.

Florencio testified about his preparation for the visits he did attend. He indicated that he gets his clothes and the things he needs for visits ready the night before and that he usually brings the children "something from home, a stuffed animal, a fake cell phone, something." Florencio noted that he arrives early in order to get his vouchers and make sure he has food for the children. His most recent visit was about 2 weeks prior to trial.

Florencio testified about his circumstances prior to the start of this case. Florencio was homeless and did not know that Kym was pregnant with Sage. At some point, he learned that Kym

was in a "sober living environment." According to Florencio, he took King to the facility where Kym was staying, so he could "try to get [his] life back on track." He indicated that he did not learn Kym had gone to Nebraska with King and had given birth to Sage until he was contacted by Kym's mother. Florencio testified that if he had known what Kym was going to do, he would not have left King with her. He did not have any contact with Kym at the time of trial.

On July 10, 2024, the juvenile court entered orders terminating Florencio's parental rights to the children. The court found clear and convincing evidence to terminate his parental rights under § 43-292(2), (6), and (7) and that termination of his parental rights was in the children's best interests.

## ASSIGNMENTS OF ERROR

Florencio assigns, restated, that the juvenile court erred in (1) finding clear and convincing evidence to terminate his parental rights pursuant to § 43-292(2), (4), (6), and (7) and (2) finding that termination of his parental rights was in the children's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Jordon B.*, 316 Neb. 974, 7 N.W.3d 894 (2024). When the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023).

## ANALYSIS

*Statutory Grounds.*

Florencio assigns that the juvenile court erred in finding clear and convincing evidence to terminate his parental rights pursuant to § 43-292(2), (4), (6), and (7). The court found clear and convincing evidence to terminate Florencio's parental rights under § 43-292(2), (6), and (7); the court did not address the State's motion to terminate with respect to § 43-292(4). Upon our de novo review, we find that the State presented clear and convincing evidence to support termination of Florencio's parental rights under § 43-292(7). Proof of one statutory ground is needed for termination, and the record clearly shows that statutory grounds for termination of his parental rights exist under § 43-292(7).

Section 43-292(7) allows for termination when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." Section 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). Florencio argues that he was unaware of Kym's departure from Colorado with King and of Sage's birth in Nebraska until Kym's mother contacted him and that he would never have allowed Kym to travel with King if he had known what Kym intended. Florencio also observes that placement of a child outside the home for 15 or more the most recent 22 months under § 43-292(7) merely provides a guideline for what would be a reasonable time for parents to rehabilitate themselves to a minimum degree of fitness. See *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

We agree that a child's placement outside the home for 15 or more of the most recent 22 months does not necessarily demonstrate parental unfitness. See *id.* Regardless of the length of time a child is placed outside the home, it is always the State's burden to prove by clear and convincing evidence that the parent is unfit and that the child's best interests are served by his or her continued removal from parental custody. *Id.* In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the child. See *In re Interest of Noah C.*, 306 Neb. 359, 945 N.W.2d 143 (2020). We have addressed Florencio's arguments with respect to parental unfitness and best interests below.

The children were removed from their mother's care and placed in the Department's custody on September 12, 2022. The children have been in out-of-home placement continuously since that time. At the time the termination motions were filed on February 7, 2024, the children had been in out-of-home care for close to 17 months. Our de novo review of the record clearly and convincingly shows that grounds for termination of Florencio's parental rights under § 43-292(7) were proven by sufficient evidence.

The juvenile court also found sufficient evidence to support termination under § 43-292(2) and (6), but we do not need to consider whether termination of Florencio's parental rights was proper pursuant to those subsections since § 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. See *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012). However, we will consider evidence relevant to § 43-292(2) and (6) in our analysis of best interests. Generally, when termination of parental rights is sought, the evidence adduced to prove the statutory grounds for termination will also be highly relevant to the best interests of the juvenile, as it would show abandonment, neglect, unfitness, or abuse. *In re Interest of J'Endlessly F. et al.*, 26 Neb. App. 497, 920 N.W.2d 858 (2018).

*Best Interests and Unfitness.*

Florencio assigns that the juvenile court erred in finding that termination of his parental rights was in the children's best interests.

In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the children. See *In re Interest of Noah C., supra.* There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 579, 3 N.W.3d 376 (2024). Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.* Parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 473 (2023). The best interests and parental unfitness analyses in the context of a termination of parental rights case require separate, fact-intensive inquiries, but each examines essentially the same underlying facts. *Id.*

Florencio argues that the juvenile court did not recognize his efforts toward reunification and did not effectively evaluate whether termination of his parental rights was in the children's

best interests. Florencio was clearly placed in an unfortunate situation through Kym's actions that brought the children into the juvenile court system in Nebraska. And the visits he has had with the children have gone reasonably well, with certain improvements over the course of this case. However, Florencio has missed visits with the children and never progressed past having fully supervised visits with the children. He has taken some steps to improve his life through the services available to him in Colorado, but the record reflects a general lack of progress in not only this case, but also in the Colorado cases involving his children there. The availability of certain items for the children in Florencio's apartment in Colorado and his preparations for the limited number of visits he has participated in in Nebraska do not demonstrate that he is prepared and able to care for the children successfully in his residence on a full-time basis. Concerns remain about Florencio's sobriety and his ability to provide for the children, given his lack of employment.

Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Cameron L. & David L., supra*. We conclude that the State showed by clear and convincing evidence that Florencio was unfit, and that termination of his parental rights was in the children's best interests.

CONCLUSION

For the reasons set forth above, we affirm the juvenile court's orders terminating Florencio's parental rights to King and Sage.

AFFIRMED.