Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/27/2018 08:10 AM CST

In re Interest of Aly T. and Kazlynn T.,
children under 18 years of age.
State of Nebraska, appellee,
v. Tiffany S., appellant.

___ N.W.2d ___

Filed November 27, 2018.    No. A-17-1237.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Parental Rights: Proof.** In Nebraska statutes, the bases for termination of parental rights are codified in Neb. Rev. Stat. § 43-292 (Reissue 2016). Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child.

3. ____: ____. The State must prove the facts by clear and convincing evidence when showing a factual basis exists under any of the 11 subsections of Neb. Rev. Stat. § 43-292 (Reissue 2016).

4. **Evidence: Proof: Words and Phrases.** Clear and convincing evidence is the amount of evidence that produces a firm belief or conviction about the existence of a fact to be proved.

5. **Parental Rights: Evidence: Proof.** In order to terminate parental rights under Neb. Rev. Stat. § 43-292(6) (Reissue 2016), the State must prove by clear and convincing evidence that (1) the parent has failed to comply, in whole or in part, with a reasonable provision material to the rehabilitative objective of the plan and (2) in addition to the parent's noncompliance with the rehabilitative plan, termination of parental rights is in the best interests of the child. The State is required to prove that the parents have been provided with a reasonable opportunity to rehabilitate themselves according to a court-ordered plan and have failed to do so.

- 613 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

6. **Parental Rights: Evidence: Appeal and Error.** If an appellate court determines that a lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in Neb. Rev. Stat. § 43-292 (Reissue 2016), the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground.

7. **Rules of Evidence: Expert Witnesses.** An expert's opinion is ordinarily admissible under Neb. Rev. Stat. § 27-702 (Reissue 2016) if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination.

8. **Parental Rights: Rules of Evidence: Due Process.** The Nebraska Evidence Rules do not apply in cases involving the termination of parental rights. Instead, due process controls and requires that the State use fundamentally fair procedures before a court terminates parental rights.

9. ____: ____: ____. In determining whether admission or exclusion of particular evidence would violate fundamental due process, the Nebraska Evidence Rules serve as a guidepost.

10. **Parental Rights: Proof.** In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the child.

11. **Constitutional Law: Parental Rights: Proof.** A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit.

12. **Parental Rights: Presumptions: Proof.** There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit.

13. **Parental Rights: Words and Phrases.** The term "unfitness" is not expressly used in Neb. Rev. Stat. § 43-292 (Reissue 2016), but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests.

14. ____: ____. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being.

15. **Parental Rights.** The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other.

- 614 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

Appeal from the Separate Juvenile Court of Douglas County: Christopher E. Kelly, Judge. Affirmed.

Charles M. Bressman, Jr., and Megan E. Lutz-Priefert, of Anderson, Bressman, Hoffman & Jacobs, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, Sarah Schaerrer, and Laura Elise Lemoine, Senior Certified Law Student, for appellee.

Pirtle, Riedmann, and Welch, Judges.

Pirtle, Judge.

## INTRODUCTION

Tiffany S. appeals the order of the separate juvenile court of Douglas County terminating her parental rights to her two children Aly T. and Kazlynn T. She contends that she was not given a sufficient amount of time to rehabilitate herself and comply with the case plan, the caseworker was not qualified to give an expert opinion as to the children's best interests, and the court erred in finding that terminating her parental rights was in the children's best interests. Following our de novo review of the record, we affirm.

## BACKGROUND

Aly, born in January 2010, and Kazlynn, born in June 2008, were initially brought to the attention of the Nebraska Department of Health and Human Services (Department) in October 2016 after being involved in a car accident in which their father was driving while under the influence of alcohol. As a result of the car accident, Aly suffered a traumatic brain injury, from which she has significantly recovered but requires ongoing monitoring. Kazlynn suffered more severe injuries and remains in a vegetative state at a long-term care facility. Aly and Kazlynn were in the custody of their father at the time of the accident. His parental rights have since been terminated. See *In re Interest of Jade H. et al.*, 25 Neb. App. 678, 911 N.W.2d 276 (2018).

- 615 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

On October 25, 2016, the State filed a petition alleging Aly and Kazlynn were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), because they lacked proper parental care by reason of the fault or habits of Tiffany in that Tiffany's whereabouts were unknown; she failed to provide the juveniles with safe, stable, and/or appropriate housing; she failed to provide proper parental care, support, supervision and/or protection for the juveniles; and the juveniles were at risk for harm.

On November 18, 2016, the State filed a second supplemental petition alleging Aly and Kazlynn were within the meaning of § 43-247(3)(a), because they lacked proper parental care by reason of the fault or habits of Tiffany in that Tiffany's use of alcohol and/or controlled substances places the juveniles at risk for harm; she tested positive for methamphetamine on November 17; she failed to provide the juveniles with safe, stable, and/or appropriate housing; she failed to provide the juveniles with proper parental care, support, and/or supervision; and the juveniles were at risk for harm.

An adjudication hearing was held on April 19, 2017, and with the exception of the use of alcohol and/or controlled substances allegation, the court found the allegations in the second supplemental petition were true by a preponderance of the evidence. The court found that Aly and Kazlynn came within the meaning of § 43-247(3)(a) as far as Tiffany was concerned.

A disposition hearing was held on June 6, 2017, at which time the court ordered Tiffany to participate in intensive outpatient treatment, undergo a psychiatric evaluation, participate in medication management, submit to frequent and random drug testing to include testing for alcohol, abstain from the use of all "mood altering chemicals" and illegal drugs, and be allowed reasonable rights of supervised visitation with Aly and Kazlynn.

On August 2, 2017, the State filed a motion to terminate Tiffany's parental rights. The State alleged that termination

- 616 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

of her parental rights was warranted pursuant to Neb. Rev. Stat. § 43-292(2) (Reissue 2016), because she has substantially and continuously or repeatedly neglected and refused to give her children necessary parental care and protection, and pursuant to § 43-292(6), because reasonable efforts to preserve and reunify the family failed to correct the conditions that led to the determination that the children were within the meaning of § 43-247(3)(a). The motion specifically alleged that Tiffany had failed to participate in outpatient treatment, failed to undergo a psychiatric evaluation, failed to submit to urinalysis (UA) testing as requested, and failed to consistently or regularly participate in visitation with Aly and Kazlynn. In addition, the State alleged that termination of Tiffany's parental rights was in the best interests of the children.

Trial was held on the motion to terminate on October 31, 2017. Tiffany did not appear for the trial, and her attorney had no explanation as to why she was not present.

The State's first witness was Wendy Stevenson, a child and family permanency specialist with the Department. She had been Aly and Kazlynn's case manager since October 2016.

Stevenson testified that she had a bachelor's degree in education, had been a child and family permanency specialist for 7 years, received training on when it is appropriate to recommend termination of parental rights, and received ongoing training from the Department. Stevenson testified that in determining whether termination of parental rights is in a child's best interests, she considers the following:

> [t]he amount of participation a parent is putting forth in a case, whether they're trying to meet any of the goals that are set forth in the case plan, if they're seeing their child on a regular basis, the type of interactions they have with their child, what's in the best interest of the child, and how the child is reacting to what is occurring during visitation . . . .

Stevenson testified about what the court had ordered Tiffany to do to work toward reuniting with her children and about

- 617 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

Tiffany's compliance with those orders. She testified that Tiffany had been ordered to undergo a chemical evaluation and follow through with the recommendations of that evaluation. Tiffany underwent a chemical evaluation in February 2017, but had not followed through with the recommendations which included a psychiatric evaluation and outpatient treatment. In June, the court also ordered her to undergo a psychiatric evaluation and to participate in outpatient treatment. In regard to the psychiatric evaluation, Stevenson stated she set up a "Letter of Agreement" with a behavioral health services agency, which agreement was in effect from March to May, but Tiffany did not contact the agency to set up an appointment. Stevenson also testified that to her knowledge Tiffany had not attended any outpatient sessions. She testified that she sent Tiffany text messages and called her, trying to get her to comply with the psychiatric evaluation and the outpatient treatment, but she did not comply.

Stevenson testified that since November 2016, Tiffany has been ordered to participate in UA testing. Stevenson testified that the first agency doing the testing discharged Tiffany in June 2017 because she was not complying. Tiffany did not complete any UA testing between February 22 and June 6, resulting in 28 missed tests. An exhibit was entered into evidence showing that a total of 77 tests were requested with the first agency and 42 of those were unsuccessful.

In June 2017, Stevenson referred Tiffany to another agency for UA testing. Stevenson testified that the second agency would go to Tiffany's house to do the UA testing, but that Tiffany never would answer her door. On two occasions, Stevenson had the agency locate Tiffany during her visitation time with Kazlynn. Tiffany "caused [a] scene" both times and refused to do the UA testing on both occasions. Tiffany has indicated to Stevenson that she does not want to do the UA testing and is not going to do it.

As for Tiffany's visitation with Aly and Kazlynn, Stevenson testified that initially after the car accident, Tiffany could

- 618 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

come to see the children in the hospital unsupervised. In mid-November 2016, the visits were changed to supervised visits based on a statement Tiffany made to Stevenson. Visitation has remained supervised since that time.

When the first visitation schedule was established, Tiffany was offered two or three visits per week with Aly and two or three separate visits per week with Kazlynn. Stevenson testified that in August 2017, the number of Tiffany's visits was reduced because Tiffany was not regularly attending visits. At the time of trial, Tiffany was allowed only one visit per week with each child—a 2-hour visit with Aly and a 1-hour visit with Kazlynn. Beginning in March or April 2017, Tiffany was also required to call and confirm each visit because she was not showing up for visits, which Stevenson stated was "devastat[ing]" for Aly.

Stevenson testified that at a family team meeting on August 29, 2017, she talked with Tiffany about her noncompliance with the court orders and asked what the Department could do to help her. She said that Tiffany would not talk to her about why she had not complied with the court orders.

Stevenson also testified that at the time of the team meeting, Tiffany's chemical evaluation was "out of date," so she told Tiffany how to contact a behavioral health agency for another chemical evaluation. Tiffany called the agency, but when she reached an answering machine, she became aggravated, said she was not going to leave a message, and hung up. Stevenson testified that after the day of the family team meeting, she sent Tiffany text messages several times asking if she had made contact with the agency about her chemical evaluation. Tiffany responded on one occasion, indicating that she called the agency, but reached the answering machine and did not leave a message.

Stevenson testified that she has attempted to meet with Tiffany on a monthly basis and to have a family team meeting on a monthly basis as well, but has been unsuccessful. The family team meeting that Tiffany attended in August 2017

- 619 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

was held the same day the parties had been in court, when it was decided to have a meeting because the parties were already present.

Stevenson testified that she cannot get Tiffany to have contact with her; the only time Tiffany has any contact with her is when Tiffany "wants something." She also testified that Tiffany has been noncompliant with her and the Department and does not want to do anything to comply with the court orders, which Stevenson finds concerning.

After Tiffany was served with the motion to terminate her parental rights, filed on August 2, 2017, she contacted Stevenson and indicated she wanted to comply with the court orders because she did not want to "lose her children." Stevenson and Tiffany texted back and forth for about 40 minutes discussing what Tiffany needed to do. Stevenson testified that after that communication, she did not hear anything further from Tiffany until August 29, 2017.

Stevenson testified that in her opinion, it was in Aly's and Kazlynn's best interests to terminate Tiffany's parental rights. She stated that her opinion was based on "[t]he fact that [Tiffany] has not done anything in a year's time to try to even get to a point where we could even look at going to monitored visits, let alone moving her child in with her . . . ." She further stated:

> [Tiffany] has done nothing in the last year to prove that she can parent either one of these children, and it's just in the children's best interest at this point in time to not continue to put them through the visits and the visits not happening and those type[s] of things.

Carolyn Brandau, a family support specialist and visitation worker, also testified on behalf of the State. She had been the visitation worker for Aly and Kazlynn since April or May 2017. Brandau testified that Tiffany had missed a lot of visits since Brandau became the visitation worker. She also testified that there have been times when she has picked up Aly to go to a visit and when they get to the visitation location, Tiffany

- 620 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

does not show up. Brandau testified that when this happens, it is "heartbreaking" for Aly. Brandau stated, "[Aly] cries and cries . . . I want my mommy. I want my mommy. Why does my mommy not want to see me? And it's just — it's very heartbreaking to hear." Brandau stated that on the visits that Tiffany does attend, Brandau has to redirect Tiffany at times and she does not react favorably to the redirection. She testified that Tiffany does not always display good parenting skills and judgment during visits.

Brandau also testified that due to Aly's brain injury, Aly has some physical limitations and needs to be monitored. She is not supposed to run, jump, or do any strenuous activity. She testified that Tiffany is not good at monitoring Aly's activity and encourages her to go against the limitations. Tiffany tells Brandau that she is Aly's mother and knows what is best for her.

Brandau testified that she agreed with Stevenson's testimony that Tiffany had not done anything in the past year to help her reunite with her children.

Following trial, in an order dated October 31, 2017, the juvenile court found the allegations in the State's motion to be true by clear and convincing evidence. The court determined that Tiffany's parental rights should be terminated pursuant to § 43-292(2) and (6) and that termination was in the children's best interests.

## ASSIGNMENTS OF ERROR

Tiffany assigns that the juvenile court erred in (1) allowing her only 7 months to complete the rehabilitation plan, (2) finding that Stevenson had the foundational requisites to give an expert opinion, and (3) determining that it was in the children's best interests to terminate her parental rights.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of LeVanta S.*, 295 Neb.

- 621 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

151, 887 N.W.2d 502 (2016). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

*Statutory Grounds for Termination.*

Tiffany first assigns that the juvenile court erred in allowing her only 7 months—the time between adjudication and the termination of her parental rights—to complete the rehabilitation plan. She argues that she was not given enough time to comply with the court's orders and that therefore, the court erred in finding that grounds to terminate existed under § 43-292(2) and (6).

[2] In Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

[3,4] The State must prove the facts by clear and convincing evidence when showing a factual basis exists under any of the 11 subsections of § 43-292. See *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). Clear and convincing evidence is the amount of evidence that produces a firm belief or conviction about the existence of a fact to be proved. See *id.*

In its order terminating Tiffany's parental rights to her children, the juvenile court found that the State had presented clear and convincing evidence to satisfy § 43-292, which provides in relevant part:

> The court may terminate all parental rights . . . when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:

- 622 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

. . . .

(2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;

. . . .

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination.

[5] In order to terminate parental rights under § 43-292(6), the State must prove by clear and convincing evidence that (1) the parent has failed to comply, in whole or in part, with a reasonable provision material to the rehabilitative objective of the plan and (2) in addition to the parent's noncompliance with the rehabilitative plan, termination of parental rights is in the best interests of the child. *In re Interest of Kassara M.*, 258 Neb. 90, 601 N.W.2d 917 (1999). The State is required to prove that the parents have been provided with a reasonable opportunity to rehabilitate themselves according to a court-ordered plan and have failed to do so. *Id.*

As previously stated, Tiffany contends that she was not given enough time to comply with the rehabilitation plan. She also argues that Stevenson did not do enough to help her meet the court's requirements. Although Tiffany was not given as much time to rehabilitate herself as we have seen in some other cases, the evidence shows that she was given adequate time to comply in whole or in part with many of the provisions ordered by the court and that she chose not to comply.

The motion to terminate specifically alleged, in regard to § 43-292(6), that Tiffany had failed to participate in outpatient treatment, failed to undergo a psychiatric evaluation, failed to submit to UA testing as requested, and failed to consistently or regularly participate in visitation with Aly and Kazlynn. The

- 623 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

testimony of Stevenson and Brandau clearly and convincingly established that Tiffany has failed to comply with the provisions set forth in the motion to terminate, as well as other provisions.

Tiffany submitted to a chemical evaluation in February 2017, but she failed to follow through with the recommendations, which included a psychiatric evaluation and outpatient treatment. She was also court ordered to undergo a psychiatric evaluation and participate in outpatient treatment in June. Stevenson testified that she tried to help Tiffany get both set up, but Tiffany did not follow through. Stevenson told Tiffany the agency to contact to get another chemical evaluation when the first one was "out of date." Tiffany called the agency but would not leave a message. Consequently, Tiffany has not submitted to another chemical evaluation, nor has she undergone a psychiatric evaluation.

In regard to UA testing, Stevenson testified that Tiffany was discharged by the first agency based on her failure to comply. Tiffany did not submit to any UA testing between February 22 and June 6, 2017, resulting in 28 missed tests. A total of 77 tests were requested with the first agency and 42 of those were unsuccessful. In June, Stevenson referred Tiffany to another agency for UA testing, and Tiffany continued to be noncompliant. The new agency would go to Tiffany's house to do the UA testing and she would not answer the door. Tiffany has indicated that she does not want to do the UA testing and is not going to do it.

As to visitation, Tiffany's visits became supervised in November 2016 and have remained supervised since then. In March or April 2017, Tiffany was required to call and confirm each visit because she was often not showing up for visits without any notice, which was "devastat[ing]" for Aly. The number of weekly visits were reduced in August because Tiffany was not consistently attending visits.

Brandau testified that Tiffany has missed a number of visits since Brandau became the visitation worker in April or May 2017. Brandau stated that during the visits Tiffany attends, she

- 624 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

has to redirect Tiffany at times and she does not react favorably to the redirection. Brandau also testified that Tiffany does not always display good parenting skills and judgment during visits. Brandau further testified that Tiffany does not monitor Aly's activity level and encourages her to go against the physical limitations she is supposed to adhere to because of her head injury. Tiffany tells Brandau that she is Aly's mother and that she knows what is best for her.

Stevenson testified that she has made attempts to meet with Tiffany on a monthly basis and to have family team meetings on a monthly basis as well. Stevenson testified that Tiffany has been noncompliant with the Department and will not have contact with her, unless Tiffany wants something.

We conclude that the evidence clearly and convincingly established that Tiffany has failed to comply, in whole or in part, with reasonable provisions of the rehabilitation plan and that she had adequate time to do so. The evidence also shows that Stevenson has tried to meet with Tiffany, to communicate with her, and to help her set up services, but that Tiffany refuses to accept Stevenson's assistance and to comply with the court orders. Therefore, the statutory ground for termination of Tiffany's parental rights under § 43-292(6) is satisfied.

[6] If an appellate court determines that a lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Chloe C.,* 20 Neb. App. 787, 835 N.W.2d 758 (2013). Thus, we do not address the sufficiency of the evidence to support termination under § 43-292(2). The next inquiry is whether termination of Tiffany's parental rights is in the children's best interests.

*Best Interests and Parental Fitness.*

[7] In addressing the juvenile court's finding that termination was in the children's best interests, Tiffany argues that

- 625 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

the court erred in allowing Stevenson to give an opinion on the best interests of the children because she was not qualified to give an expert opinion. Neb. Rev. Stat. § 27-702 (Reissue 2016) governs the admissibility of expert testimony and provides that the witness must be qualified as an expert: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." An expert's opinion is ordinarily admissible under § 27-702 if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. *In re Interest of Kindra S.*, 14 Neb. App. 202, 705 N.W.2d 792 (2005).

[8,9] We have previously recognized that the Nebraska Evidence Rules do not apply in cases involving the termination of parental rights. See *In re Interest of Destiny A. et al.*, 274 Neb. 713, 742 N.W.2d 758 (2007). Instead, due process controls and requires that the State use fundamentally fair procedures before a court terminates parental rights. *Id.* In determining whether admission or exclusion of particular evidence would violate fundamental due process, the Nebraska Evidence Rules serve as a guidepost. *Id.*

Stevenson's best interests opinion was based on her own observations and interactions with Tiffany as the caseworker for Tiffany and her children. Stevenson had been the only caseworker. Before giving her best interests opinion, Stevenson had given specific testimony as to how Tiffany had failed to comply with the court's orders and refused to cooperate with her and the Department. Tiffany cross-examined Stevenson and did not put on any of her own evidence to contradict Stevenson's testimony.

We conclude that the juvenile court did not err in allowing Stevenson to give an opinion in regard to the best interests of the children.

- 626 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

[10-15] Tiffany next asserts the juvenile court erred in finding that there was clear and convincing evidence to establish that termination of her parental rights was in the children's best interests. In addition to proving a statutory ground, the State must show that termination is in the best interests of the child. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests. *In re Interest of Kendra M. et al., supra*. In discussing the constitutionally protected relationship between a parent and a child, the Nebraska Supreme Court has stated: "'"Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being."'" *Id.* at 1033-34, 814 N.W.2d at 761. The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *In re Interest of Kendra M. et al., supra*.

When the initial petition to adjudicate was filed on October 25, 2016, Tiffany's whereabouts were unknown and Aly and Kazlynn's father had custody of them. Since that time, Tiffany has been noncompliant with the court's orders and has put forth little effort toward reuniting with her children. Even after being served with the motion to terminate her parental rights, she initially indicated she wanted to comply with the

- 627 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF ALY T. & KAZLYNN T.
Cite as 26 Neb. App. 612

case plan, but her interest quickly waned, and Stevenson had no contact with her for several weeks. Stevenson testified that throughout the case, Tiffany would not communicate with her or have any contact with her.

Stevenson testified that in her opinion, it was in the best interests of Aly and Kazlynn to terminate Tiffany's parental rights. She stated that her opinion was based on the fact that Tiffany had not done anything in the last year to rehabilitate herself. She indicated that Tiffany had not even done enough to get her visits changed from being supervised. She further indicated that Tiffany had not done anything in the past year to prove she can parent her children and that it was not in the children's best interests to continue to schedule visits and have them not occur. Brandau testified that she agreed with Stevenson's testimony that Tiffany had made little effort in the past year to help her reunite with her children. Brandau also testified that it is "heartbreaking" for Aly when Tiffany does not show up for visits. Brandau stated that Aly cries and asks why Tiffany does not want to see her.

Tiffany has not complied with the court orders, and her lack of involvement shows that she does not plan to comply. She has not demonstrated a willingness or a desire to parent Aly and Kazlynn. Based upon our de novo review of the record, we find clear and convincing evidence that Tiffany is unfit. We also find that it was shown by clear and convincing evidence that termination of Tiffany's parental rights would be in the children's best interests.

## CONCLUSION

Based on our de novo review, we conclude that the juvenile court did not err in terminating Tiffany's parental rights to Aly and Kazlynn. Accordingly, the court's order is affirmed.

AFFIRMED.