IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ALIVIA B. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ALIVIA B. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,

V.

HEATHER C., APPELLANT, AND TIMOTHY B.,
APPELLEE AND CROSS-APPELLANT.

Filed December 3, 2019.    Nos. A-19-171 through A-19-174.

Appeals from the County Court for Scotts Bluff County: KRIS D. MICKEY, Judge. Affirmed.

William E. Madelung, of Madelung Law Office, P.C., L.L.O., for appellant.

Katy A. Reichert, of Chaloupka, Holyoke, Snyder, Chaloupka & Longoria, P.C., L.L.O., for appellee Timothy B.

No appearance for appellee State of Nebraska.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Heather C. appeals, and Timothy B. cross-appeals, the orders of the Scotts Bluff County Court, sitting in its capacity as a juvenile court, terminating their parental rights to their four children, Alivia B., Avah B., Audrina B, and Aniya B. Heather and Timothy contend that certain statutory grounds for termination were not proved by clear and convincing evidence and that

- 1 -

termination was not in their minor children's best interests. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

Heather and Timothy are the parents of four minor children: Alivia, born in April 2008; Avah, born in August 2009; Audrina, born in June 2012; and Aniyah, born in June 2014. On July 13, 2017, the four children were removed from their home due to substance abuse by their parents and lack of safe and stable housing including inappropriate people residing in the home and failure to meet the children's basic needs. The minor children were placed with their maternal grandmother, Lillian B., where they have remained since that time.

Also on July 13, 2017, adjudication petitions were filed regarding each of the four children alleging that each child was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because the juveniles' parents' use of controlled substances placed the juveniles at risk of harm and/or deprived the juveniles of necessary parental care; the juveniles lacked safe and stable housing because of drug use in the home and because of the individuals the parents allowed to live in or allowed to "hangout" in the home; and the juveniles' parents failed to meet the juveniles' basic needs for care, including food, support, supervision, and protection.

The children were adjudicated as to Timothy in August 2017 and adjudicated as to Heather the following month. One year later, in August 2018, the State filed motions to terminate Heather and Timothy's parental rights. The motion to terminate Heather's parental rights alleged statutory grounds under Neb. Rev. Stat. § 43-292(2) and (4) (Reissue 2016) and that termination was in the minor children's best interests. The motion to terminate Timothy's parental rights alleged statutory grounds pursuant to § 43-292(1) and (2) and that termination was in the minor children's best interests. During the termination hearing, the court allowed the State to amend the motions to terminate to conform to the evidence to reflect an additional ground for termination under § 43-292(7) on the basis that the children had been in out-of-home placement for at least 15 of the prior 22 months.

The termination hearing was held in November 2018. Witnesses included: Kylie Wilson, a Nebraska Department of Health and Human Services (DHHS) children and family services specialist; Rodney Matilainen, a licensed drug and health counselor; Vicky Moreno, an investigator for the Scotts Bluff County Attorney's office; and Lillian B., the minor children's maternal grandmother and foster care provider. Additionally, both the mother and father each testified in his or her own behalf.

### KYLIE WILSON

Wilson testified that she was the caseworker in this case in April and May 2018 and again from August 2018 until the termination hearing. Wilson testified that Heather was ordered to complete a substance abuse evaluation which was completed in July 2017 with Rodney Matilainen. Matilainen recommended that Heather attend an intensive outpatient program, individual substance abuse counseling, drug testing, and attend AA/NA meetings. Matilainen also recommended that if Heather did not comply with these recommendations, he would refer her to a short-term residential facility. Wilson testified that Heather relapsed in March 2018 and completed an updated substance abuse evaluation with Matilainen at that time so that Heather

could get a referral for short-term residential treatment. Heather was released from residential treatment after her tooth became infected so that she could have that issue resolved. Heather did not return to residential treatment.

Wilson testified that in addition to completing a substance abuse evaluation, Heather was also ordered to comply with drug testing including drug patches, urinalysis (UA) testing, and mouth swabs. According to Wilson, Heather expressed that the patches were inaccurate so additional testing methods were authorized to supplement the patches. According to Wilson, the drug patches are continuous and provide a longer exposure window than the UA testing or mouth swabs because the

> drug patch monitors the individual it's placed on constantly, 24 hours a day, for seven to ten days after it's placed, and then it's removed following the drug procedure instilled with that company and sent to a lab where it is tested, and then a report is sent back to the provider.

Wilson testified that, from August 2017 until October 2018, fifteen of Heather's drug patches tested positive for methamphetamine and seven of the patches tested positive for both methamphetamine and amphetamine. Since May 2018, all of Heather's drugs patches have tested positive, and on November 20, Heather had a positive mouth swab for methamphetamines.

Wilson testified that in January and February 2018, Heather was having unsupervised visitations and some overnight visits in Heather's home. However, Heather's visits reverted to supervised visits after Heather tested positive for drugs. According to Wilson, visits were again moved into Heather's home in October because "[e]ven through her positive patches were still coming back, we moved them back in because of her [negative] UAs." However, the visits remained supervised. Wilson also testified that, initially, Heather was inconsistent in attending Sunday visitations, so Heather had to start arriving for visits 30 minutes prior to the start time of the visit or the visit would be cancelled. After this new policy was implemented, Heather's consistency in attending visits improved.

Wilson also testified that Heather has maintained consistent housing since October 2017, maintained consistent employment as a school bus monitor, completed the Circle of Security class, and attended AA/NA meetings.

Wilson testified that, at the time the children were removed from the home in July 2017, the concerns related to substance abuse and the lack of safe and stable housing. At the time of the termination hearing, Wilson stated that "I still have concerns for substance abuse just because of this most recent positive test and concern that Heather has not changed her places, peoples, and things, and, therefore, not really set herself into a position where she can maintain that sobriety long term."

Wilson also testified regarding Timothy who she stated has been incarcerated the majority of the duration of this case. According to Wilson, Timothy had been incarcerated on September 19, 2017; from October 19, 2017, through January 24, 2018; from February 2 through April 17, 2018; and from May 23, 2018 through the termination hearing. Wilson testified that during the periods of time that Timothy was not incarcerated, his case plan included supervised visits, drug tests, a substance abuse evaluation, and a parenting and psychological assessment. Timothy completed a substance abuse evaluation, participated in family team meetings, and did not have

any positive drug tests throughout the case. However, he did not complete the parenting and psychological evaluation. Timothy had supervised visits on October 1, 8, and 15, 2017; April 23, 25, 27, 28, and 30, 2018; and May 1 and 2, 2018. Further, Timothy ended visits early on October 22 and 29, 2017. Timothy did not have visits with his children from May 2 to May 23 despite the fact that he was not incarcerated during that time. Timothy is $29,042.66 in arrears in child support.

Wilson testified that, during Timothy's incarceration, he sent his daughters "at least" eight letters between May 2018 and the termination hearing. Timothy also participated in services offered to him during his incarceration such as men's trauma class, Celebrate Recovery, AA, and a life skills class.

According to Wilson, part of her job requirement is to have monthly contact with the children in her cases, and she did so in this case. Based upon her contacts with the children and the conversations she had with the children, Wilson testified regarding the children's impressions of their relationships with Timothy:

Really the only one that has talked to me about her dad has been . . . Aniyah. She's the youngest one. And on my home visit last month she asked me if I could get a picture of her dad for her. And I told her that I didn't know if I could do that but I would try. And the whole reason why she wanted a picture of her dad was because she couldn't remember what he looked like.

Wilson testified that the children had been in out-of-home care for 16 months and that the case was not where she would expect it to be after 16 months, and she opined that it was in the minor children's best interests for Heather and Timothy's parental rights to be terminated so that the children could attain permanency.

RODNEY MATILAINEN

Matilainen conducted an initial assessment of Heather in July 2017 pursuant to a referral by DHHS. He diagnosed Heather with methamphetamine use disorder, moderate; cannabis use disorder, moderate; and alcohol use disorder, in remission, and recommended following up with eight to ten individual sessions occurring weekly in order to help Heather identify that she had a substance abuse problem. Heather was inconsistent in attending sessions but she began to identify that she had a substance abuse problem after Matilainen confronted her with her positive drug screens. Matilainen helped Heather obtain a referral for residential treatment, but Heather did not complete that program. After leaving the residential treatment program, Heather returned to counseling with Matilainen on an outpatient basis but, again, her attendance was sporadic and she was still having positive drug screens. Although Heather acknowledged her substance abuse problem, she resisted returning to residential treatment so Matilainen referred her to an intensive outpatient program which she started at the end of October 2018. Heather identified her triggers to include certain people, stress, and her depression. Matilainen admitted that since Heather had started the intensive outpatient program, she had not found a sponsor, she had medical issues that have kept her from attending group sessions, and although she has been having negative UA test results, Heather is able to choose when she comes in for the UA testing.

## VICKY MORENO

Moreno testified that as part of her employment as an investigator for the Scotts Bluff County Attorney's Office, she monitors telephone calls made by inmates from the jail. As relevant to this case, she monitored telephone calls made by Timothy to Heather. Moreno testified that the previous day, November 26, 2018, at 4:45 p.m., Timothy called Heather to discuss

> getting ready for court today, and [Timothy] was asking questions trying to memorize and ask his daughters' birth dates because he did not know them. So he would guess a birth date and [Heather] would tell him, nope, that's wrong. And then she would give him the correct birth date for each child.

Moreno also testified that during a prior call occurring on November 23, Heather told Timothy that she had failed a mouth swab test and that she was "thinking about acting oblivious in court as to any of it and asked his opinion what he thought about that. And he told her no, that she had to accept and own up to it was his quote." Moreno testified that Timothy had made 512,671 calls from jail using his PIN number. According to Moreno, Timothy also made calls using other inmates' PIN numbers when he was "trying to hide who he's calling." Of those 512,671 calls, 1,013 were made to Heather and 165 were made to Lillian's telephone number.

## LILLIAN B.

Lillian testified that the minor children "are really attached to their mom. They really love her. She seems to really, really love them also. She does things for them all the time." Lillian stated that she took Heather and the minor children on a 10-day trip to Disney World at the end of July and beginning of August 2018. She stated that there were not any problems between Heather and the children during that trip.

Lillian believes that Heather is able to appropriately care for the minor children. She further testified that she believes that it is in the children's best interests to maintain a relationship with Heather "[b]ecause they are really attached to their mom. They need their mom. They just -- they talk about her every day. They want to be with her. They don't quite understand why they're not in the home." During the visits during which Lillian was present, she observed Heather giving the minor children baths, cooking them meals, and helping them with their homework.

Regarding Timothy, Lillian testified that about 3 months ago, he started calling the children more frequently and, when he calls, he talks to each child. Lillian testified that the children are excited to talk to Timothy. She further stated that he has sent the children "a few" letters and some gifts which she described as "some wind catchers and a bracelet."

## HEATHER C.

Heather testified that at the time of the termination hearing, she was employed part-time as a school bus monitor. On Saturdays and Sundays, she had visits with her children at her home from 3 p.m. to 7 p.m. She also spends 10 hours per week attending the intensive outpatient program plus 2 hours of AA/NA meetings. Heather stated that she believes that she is making progress in the intensive outpatient program and that "[e]very day I learn something new." She further testified that she had recently injured herself in October 2018 when she tripped and fell, causing her to cut her hand requiring surgery.

Heather testified about her children:

Every day after I get off the bus I go over there [to Lillian's house]. I cook them their meal. I give them a bath. We -- there's been times we'll watch a show together. Dominoes and UNO are . . . their favorite games. We sit down and play.

When baseball -- softball was [in] season . . . we would play catch and stuff outside. . . . I bathe them and get them ready for bed.

Even before IOP I go over there right after route, and I usually have a half hour to -- close to an hour before I have to go to IOP, and I will still go over there and prepare their meal, and then I'll go to IOP.

Heather testified that for Halloween, she went to Lillian's home in the morning and got the children into their costumes. After work she went to the school to do her oldest daughter's Halloween makeup, spent the entire day at their school, ate lunch with the children, and attended Halloween parties. That evening, she took the children trick-or-treating. Heather also testified that she held Thanksgiving at her house and the following day, she, Lillian, and the children went shopping. After they finished shopping, they went back to Heather's home and cooked dinner and wrapped presents.

Heather admitted that she has depression and that she is an addict. She stated that she takes medication for her depression and she has learned tools and coping mechanisms to understand that she needs to talk to people and not isolate herself. Heather testified that she has been discouraged by the drug patch results, claiming that the results are invalid. Heather testified that the last time she used methamphetamine was April 9, 2018, but that since treatment, she has "failed every patch." She further explained a recent positive mouth swab on November 20 by stating she must have failed because she had been "intimate" with someone she knew from high school. She claimed that after she tested positive for drugs, she questioned the individual who admitted to using methamphetamine. However, she later admitted that her explanation would not result in a positive mouth swab.

Heather testified that she believed it was not in the children's best interests for her parental rights to be terminated and it was in their best interests to "come home." She testified that she has maintained a steady presence in her children's lives since they were placed with Lillian stating she has seen them "[e]very day except for when I went to treatment." She further stated:

Even when I lost my girls I have attempted to see them every day. I have spent more time away from them dealing with treatment and -- and the first time I have ever spent a night away from any of my kids ever was when I went into treatment, to rehab.

And I'm grateful for treatment. I wanted to go. I was excited. But it's been tough on all of us. And my -- I have been really close to my girls. I spend 24/7 with them since they've been born. Like, literally, I worked at the day care as they were babies, every single one of them.

Being a mother to my girls is the only thing that -- is my only purpose of life. I have made mistakes, yes. I am working on my addiction, and it's going to be a lifelong process, as well as my mental illness.

And I am still going to have bumps in the road with both of them, but sobriety for my girls and for myself is my only option now. And I am trying to prove and do whatever I can to prove that.

However, Heather admitted that the intensive outpatient program was an 8- to 12-month process and her children had been in out-of-home care for 16 months. When asked how much longer her children needed to wait, Heather responded "I don't know."

TIMOTHY B.

Timothy testified that during supervised visits with his children, they carve pumpkins for Halloween, go for walks, do homework, play, clean out the children's backpacks, or watch movies. During visits, he provided snacks or made dinner. Timothy testified that "I love spending time with my kids" and that they seem to enjoy spending time with him.

Timothy testified that he has been incarcerated for the majority of the time since this case began. In July 2018, Timothy pled no contest to 18 counts of misdemeanor violation of a protection order and was sentenced to 180 days' imprisonment on each count to be served consecutively for a cumulative 3,780 days' imprisonment. Additionally, in September, Timothy pled no contest to second offense violation of a domestic abuse protection order, a Class IV felony, and was sentenced to 2 years' imprisonment followed by 12 months' postrelease supervision. This felony sentence was ordered to be served concurrently with the aforementioned misdemeanor sentences.

Timothy testified that during his incarceration, he would call his children on the telephone and send them letters "but it's kind of difficult to write . . . young ladies letters and not know what to write. So I kind of do tend to write the same things, asking them about school, asking them how Disneyland was or how their summer went." Timothy also stated that he made the children bracelets and dreamcatchers which he sent to the children as gifts. Timothy stated that he has been trying to parent his children to the best of his ability during his incarceration

[b]y phone calls. When I talk to them I talk about their school, about what they're doing for their grandma, make sure they're -- they're on point on grades, making sure the other ones are playing with the other one. You know, just -- just it's hard to do, but it's something I have to do.

He also stated that he tells his children that he loves them and they tell him that they love and miss him. However, he also admitted that he recently relinquished his parental rights to another one of his children.

Timothy described Alivia as the oldest, "my little athletic girl," and "a big mother hen." He described Avah as "my little snuggle kid" who "talks to me on the phone the most." Audrina is "a mommy's girl" who is "talkative," and Anyiyah is "my spoiled kid" who "always wants to talk to daddy no matter what." Timothy testified that he did not believe that it was in his children's best interests for his parental rights to be terminated and that he has a strong bond and beneficial relationship with his children and he is "a great father" even though he has "made some mistakes in the past year that [he has] owned up to and [he] shouldn't have made." However, he also admitted that Heather sought protection orders in December 2015 and February 2016 against him on behalf of the children.

Following the termination hearing, the court found that statutory grounds to terminate Heather's parental rights existed pursuant to § 43-292(2), (4), and (7) and that termination of her parental rights was in the minor children's best interest. Further, the court found that statutory grounds to terminate Timothy's parental rights existed pursuant to § 43-292(2) and (7) and that termination was in the children's best interests. Specifically, the court found:

> Taking into consideration the totality of the evidence in this case, including an assessment of the child[ren]'s present circumstances and adjustments, the absence of sustained improvement in parenting skills, and the child[ren]'s long-term physical, social, and emotional needs, clear and convincing evidence was presented to demonstrate that termination of Timothy and Heather's parental rights is appropriate and in the best interests of the child[ren] despite the rebuttable presumption that a child's best interests lay with his or her natural parent. There is minimal focus on the needs of the children by these parents. Neither parent has placed themselves in a position to reunify with the children in the reasonably foreseeable future. The parents' history of interactions, or lack thereof, with these children offers minimal prospects of a future where the health, safety, and welfare of the children are of paramount concern. The juvenile court system cannot and should not allow children to languish suspended indefinitely in foster care waiting to see if a parent will mature. Termination of parental rights opens to these children the possibility of a safe and stable permanent home free from the sort of chaos that characterizes the parents' lifestyle.

Heather has timely appealed to this court, and Timothy has cross-appealed.

ASSIGNMENTS OF ERROR

Heather appeals contending the court erred in finding that the State had proved, by clear and convincing evidence, the existence of statutory grounds for termination in § 43-292(2) and (4). Timothy cross-appeals, contending the court erred in finding that the State had proved, by clear and convincing evidence, the existence of statutory grounds for termination pursuant to § 43-292(2). Both Heather and Timothy contend that termination was not in their minor children's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *Id.* When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016); *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

ANALYSIS

STATUTORY BASIS FOR TERMINATION

In this case, the court found that statutory bases for termination of Heather's parental rights existed pursuant to § 43-292(2), (4), and (7), and that termination of Timothy's parental rights

existed pursuant to § 43-292(2) and (7). Although Heather and Timothy do not contest the juvenile court's determination that the State proved by clear and convincing evidence that their parental rights should be terminated pursuant to § 43-292(7), for the sake of completeness on our de novo review, we briefly address these statutory grounds.

In Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012).

In its order terminating Heather and Timothy's parental rights to their minor children, the court found that statutory grounds existed pursuant to terminate Heather's parental rights under § 43-292(2) (substantial and continuous or repeated neglect), § 43-292(4) (parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by court to be seriously detrimental to health, morals, or well-being of juvenile), and § 43-292(7) (child out-of-home for 15 or more months of most recent 22 months), and to terminate Timothy's parental rights under § 43-292(2) and (7).

Here, the minor children were in an out-of-home placement continuously since July 13, 2017. At the time of the termination hearing on November 27, 2018, the minor children had been in an out-of-home placement for a total of 16 months. Our de novo review of the record clearly and convincingly shows that grounds for termination of Heather and Timothy's parental rights under § 43-292(7) were proven by clear and convincing evidence.

We need not consider whether termination of Heather or Timothy's parental rights was proper pursuant to the other subsections of § 43-292 since any one ground of the 11 identified in § 43-292 can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. See *In re Interest of Elizabeth S., supra*.

BEST INTERESTS

Both Heather and Timothy contend that the juvenile court erred in finding that it was in the minor children's best interests to terminate their parental rights.

In *In re Interest of Becka P. et al.*, 27 Neb. App. at 508-09, 933 N.W.2d at 887-88, this court recently stated:

> In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the child. See *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015).

In cases where termination of parental rights is based on § 43-292(7), the Nebraska Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is in fact in the child's best interests. See *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005).

Regarding Timothy, in the more than 16 months that the children have been in out-of-home care, Timothy has spent the majority of the relevant time incarcerated, and during the time when he was not incarcerated, he has had only twelve supervised visits with his children, two of which he ended early. During his incarceration, Timothy made a prolific number of telephone calls, 512,671 calls, only 165 of which were made to Lillian's telephone number for the purpose of talking to his children. Timothy argues that these calls demonstrate his desire to remain in contact with his children but the record suggests otherwise. In the limited time that Timothy was not incarcerated, he was inconsistent with visitation or with pursuing opportunities for visitation.

Further, Timothy sent few letters and gifts to his children, his youngest child does not even remember what he looks like, Timothy is $29,042.66 in arrears in child support, and he recently relinquished his parental rights to another child. The record indicates that although Timothy complied with some of the items in the court-ordered rehabilitation plan, he failed to complete his parenting and psychological evaluations. The evidence also establishes that Timothy will spend several more years incarcerated. Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015); *In re Interest of J'Endlessly F. et al.*, 26 Neb. App. 497, 920 N.W.2d 858 (2018).

During Timothy's incarceration, recorded telephone conversations between Timothy and Heather revealed that following Heather's mouth swab tested positive for methamphetamine, she and Timothy discussed options which included Heather's intention to act oblivious to the positive drug test. Heather later attempted to explain the positive drug test as the result of an intimate sexual encounter with a drug user and attempted to explain away other positive drug patch results as the product of faulty drug patches. In another recorded telephone conversation prior to the termination hearing, Heather quizzed Timothy on his children's birth dates because he did not know their dates of birth.

Heather's continued positive drug tests reveal that she is either unable or unwilling to maintain a lifestyle consistently free of illegal substances. She was inconsistent in attending her substance abuse treatment classes and never returned to residential drug treatment. Heather continues to associate with drug users even though she has acknowledged that this is a trigger for her own drug use. As her caseworker opined, Heather failed to change the "places, peoples, and things" that might allow her to maintain sobriety. Although Heather professes her love for her children, their attachment to her, and their collective desire to be returned to her, this record

- 10 -

presents a scenario all too common in termination cases involving drug addiction. That is, in many cases, the addiction appears to prevail over the parent's accountability to their children. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015); *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). Although Heather's visits with her children were unsupervised for a short period of time due to Heather's drug use, they quickly reverted back to supervised visits and have not progressed due to Heather's continued positive drug tests.

Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). The minor children have been in foster care since July 2017. They deserve stability in their lives and should not be suspended in foster care when Heather is either unable or unwilling to rehabilitate herself and Timothy has been unable to place himself in a position to parent the minor children. The evidence presented establishes that neither Heather nor Timothy has been able to sustain a long-term commitment to placing the needs of their children ahead of their own wants, needs, and desires. Accordingly, we find there was clear and convincing evidence to show that both Heather and Timothy are unfit and that terminating Heather's and Timothy's parental rights was in the children's best interests.

CONCLUSION

For the reasons stated above, we affirm the court's order terminating Heather's and Timothy's parental rights.

AFFIRMED.